on behalf of appellate defendant Jack Seibert, good morning, Your Honors, and opposing counsel. Every individual charged with a criminal offense enjoys the right to reserve their narration of events, their story, until the time they testify at trial. That right is directly implicated in this appeal and, indeed, abrogated by the prosecution. Counsel? I agree with you in your general statement of law, of course, but I wonder if it's apropos here. It looked to me as though the prosecutor was not using Seibert's silence against him because he wasn't silent. He talked. And his problem was that the story he told the cop immediately upon being apprehended was different from the story he told later. So he wasn't impeached with a silence that should not have come before the jury. He was impeached with an inconsistent statement. I'm not going to be a snitch and tell you where I got the gun in particular. What am I missing? Your Honor, what you're missing is that that's the argument that the government makes in their answering brief, and a good argument, but it's not responsive at all to the questions that were asked in this case. Actually, I'm not looking at the brief. I'm looking at the transcript. What excerpt of a record page? And, Your Honor, while you're looking at that, the government did ask my client to make two statements. One was that if I'd known the gun was in there, I wouldn't have let you search. And the second one was I'm not going to rat out anybody else about where I got the weapon. Those are the two statements he made, and the prosecution cross-examined him about those statements. Now, here we are, page 122 and following of the excerpt. I figure you're not going to be able to read it. I figured you would actually know him better than I do. It looks like he wasn't silent. So his silence isn't being used against him because there wasn't any. Well, Your Honor, the government did ask him questions about those two statements, and I am not appealing that. I have no problem with those. The questions I do have a problem with, and if you'll turn with me to page 74, the excerpt from record, there are five questions on this page that we take umbrage with, but the one that's particularly offensive on this page, in my view, there's 18 questions that we allege violate the Doyle rule. But look, beginning on line 22, the prosecution asked my client on cross-examination. In fact, this story about a dispute. This is the first time you've told anybody at your trial here in front of this jury. So he's not asking him about. Enough, if it wasn't the context of this, you told a different story before, rather than you never told this story before. You were silent before. My client never told the police any story. He made only two statements. He made the statement, if I'd known, at least it's attributed to him, so it's in the record. If I'd known you'd find the gun, I wouldn't have authorized the search or whatever. So why isn't this pointing that out by questioning just in the category of like impeaching him with his prior inconsistent statement? There's nothing wrong with them doing it, and they did do that. And then the questions we're talking about here aren't talking about cross-examining him about the statements he did make. They're allowed to do that, and we concede that. The questions that we contend are erroneous. So the questions that ask the jury to draw an adverse inference from Seabird's invocation of the right to remain silent. And after he made the second statement, he invoked. He did not remain silent, though. Well, he did, he invoked, after he made the second statement. So there's nothing wrong, just so we're clear about this, there's nothing wrong about the Nothing wrong with that. They went so far afield from that in this case. Let's look at page 75, and this is the best example of this. And there's no way that this statement can be attributed to cross-examination about statements my client made. On page 75, starting on line 4, this is a question by the prosecution to Seabird. By the way, let me ask you something. After you were placed under arrest on the 10th, did a detective come to see you in jail? Mind you, there's no way that this could not have been after he re-invoked. My client, after he said, I'm not going to snitch, it's clear he invoked his right to Miranda at that time. To remain silent. So you're not claiming that they misused silence at the time of his arrest. You're saying they misused silence later on when he was in jail. Right, and then they asked questions. Wait a minute, have I got that right? That's correct. Before you go on to another argument, I want to make sure which silence you're claiming was improperly referred to. The silence after he invoked. Yes, after he made the second statement. So everything is okay at the time of arrest. That's a broad statement. What is okay is for them to cross-examine him about, you made the statement, didn't you? You said that, well, there's this dispute about whether he said if I'd remembered that the gun was in the car as opposed to if I knew. My client says he said knew, the cops say remembered. Are you claiming that a dispute about what he said makes it improper to question him about it? That is perfectly permissible. What I'm saying is impermissible are these questions about when the prosecution asked my client things like, well, when the detective came to see you after your arrest and you invoked your right to remain silent. I mean, there's no question that is clearly improper on page 75. I mean, they simply said I refused to talk to him. Right. And you could have told him exactly what happened, correct? I don't talk to police officers. Right, and there's other questions that clearly are beyond the tenor of asking him about the statements he made. Here's another question on page 77, that last line 24 question. So when you have evidence that you're innocent and someone else did something, you want to tell the police. And Siebert says that is for the jury to decide. Well, in this case, he talked to the police, correct? And he says in a limited capacity. And then on and it gets once again on page 80 on line 16, he talks about and on line 19 on ER page 80. And I assume that you told the detective when he came and saw you in jail. No, sir. There's no question that those kind of questions are talking about the fact that my client remained silent and he didn't give his full exculpatory version of events to the police. OK, let me get back to my question because you gave me kind of an iffy answer to it. And it sounds like you don't mean to be iffy. You're just trying not to give away anything. But in the process of not giving away anything, you're leaving me with an ambiguous position that I can't understand. OK, I want to know, are you challenging the use of what he said and didn't say at the time that he was arrested or only at the time the detective visited him in jail? I, Your Honor, I want to answer this question. What my position is that any question that invites the jury to draw an inverse and adverse inference from the fact that he did invoke and remain silent is impermissible. Questions that get into. That's just a general proposition. That's a general proposition. No use to me in resolving the case. Well, my position is that a lot of the questions they ask go beyond asking him cross-examination about the statements he did make and, in fact, ask him questions like, why did you never tell this exculpatory tale to the police? Why did you not give a complete, comprehensive story to the police? Which is a little odd in this case because the evidence shows that the police only asked two questions to my client. They asked him about the gun when they pulled it from the car. If a man is interviewed by the police or interviewed by the police just once and instead of being silent, he says, I didn't do it. Another guy did it. John Doe. Right. And then at trial, he says, I did it, but I was coerced by another individual, Richard Rowe. And the police say, why didn't you tell this story before? Perfectly legitimate. Legitimate. Agreed. Right. Exactly. And you'll see on page 78, the prosecution does that. They ask him about his statement. On line nine, you've made this statement about how you wouldn't rat anybody else. You made that statement, didn't you? Are you saying something different here today? There's nothing wrong with it. That's perfectly permissible. What I have problems with are these questions that are asking the jury to draw an adverse inference from the fact that he remained silent, that he didn't give a complete narrative to the police, which is somewhat odd because it's the government saying here that my client should have made spontaneous utterances of innocence because the record here only shows two questions and two statements. One question was about the gun that they pulled out of his car where my client said, if I'd known that was in there, I wouldn't have let you search. And the second question is when they asked him whether the gun was stolen and he said, I'm not going to rat anybody else out. I wish to remain silent. Now, somehow, any questions about that was permissible. Anything else is not. Somehow, I thought when I read the brief that what we're talking about here was referring to him at the time of his arrest. That's the government's argument. Is your argument clear in the brief that what you're talking about is the jail interview? Well, the jail, but if the jail interview is the most clear-cut example, but my brief says that there are other examples of questions that go beyond mere cross-examination about the statements. I guess I'm back to the same problem of being, having a hard time detecting the argument because of all the incrustations of other things. Well, let me give you a perfect example. Show me where in the brief you make your argument that's based on the jail. Well, can I give, here's an example of a question that doesn't deal with the jail that I think is improper. And this is a question on page 74. When the prosecutor asks, in fact, this story about a dispute, this is the first time you've told anybody at your trial here is in front of the jury about this whole story about the dispute. My contention is that story is improper because it's faulting Mr. Siebert for not getting a comprehensive narrative of his exculpatory version of events at the time of arrest. When A, he was never asked any questions about that, and B, he clearly invokes his right to remain silent after they asked him whether the weapon was stolen. He was never asked any questions that would have given him an opportunity to give a complete narrative because he invokes his right to remain silent. And that question is asking the jury to draw an adverse inference from that silence, saying, well. You're talking only about post-arrest. Post-arrest, yes, yes. All right. Yes. And my time is up, so I'm going to. Thank you, counsel. Good morning. Darren LaHood is my name. I work for the United States Attorney's Office in Las Vegas, Nevada. I want to address two general points, and I'll get directly to the post-arrest silence argument. The first point is at the time of the trial, there was not one objection on behalf of the defense. There was no sidebar regarding this issue, and nothing was ever expressed outside the presence of the jury by defense counsel regarding these supposed questions. The second point I'd like to make is the evidence in this case was absolutely overwhelming. The jury was out a short period of time. The victim stated earlier the defendant had a gun. He was there at the scene, identified the defendant as the person that had threatened him earlier and mentioned a gun. We have a 9-1-1 tape that's consistent with all the law enforcement officers' testimony. We never even get to any of this, though, do we, if we just pay attention to your plain, that it's not, your argument that it's not plain ever, whether it's error or not. That's correct, Your Honor. Because you never know when a defendant is letting something objectionable come in, if you're the trial judge. That's correct, Your Honor. Because they have some tactical use they're planning to make of it later. That's correct, Your Honor. Let me get specifically to the post-arrest silence. I think the timeline is absolutely important here. There's a lengthy period of time that happens from the time these officers Passage and Slattery arrive there at the scene. They arrive there at the scene. They shine a light in the car. They walk up to the car. They make the defendant step out of the vehicle. They pat him down for weapons at the front of the car. They find his I.D. They stop right there and go to a computer and run his I.D. and find out he's a felon. Before they go back to the defendant, they go over. The victim is right there at the scene, Mr. Elias. He indicates right there, that's the person I saw earlier. That's the person that had said he had a gun. And so time is going on here right now. At no time does the defendant ever spontaneously say anything to Officer Slattery, who's with him. And again, he's not under arrest. But there's a period of time going on here. What happens next? Before they begin. Let me just interrupt, if I may. Why should he spontaneously say anything? And that goes to the prosecutors commenting on the fact that he didn't say anything. Well, there's a period of time here when someone finds a gun in your vehicle or finds bullets or a victim shows up at the scene and points to this individual. You would think that you would want to tell somebody that I didn't have anything to do with him. I didn't batter him. We had a dispute over price and that whole story that now you're in court. Fifth Amendment section area. You don't have to tell police a thing. Does not have to tell a thing. Your Honor, I agree with that. And they can't use your silence against you. Your Honor, I was simply pointing out there was a period of time there when you have a victim there at the scene. You have weapons being found and there's a period after the weapon is found in his shirt in his car that he's Mirandized at that time. Now, after being Mirandized, he has plenty of time to tell this story. Why the victims there? Why he didn't batter this person? And the prosecutor kept harping on that when indeed he didn't have any obligation to say anything, did he? Well, he waived his rights and he has that opportunity to speak to police freely, which he said he had an opportunity, which he may or may not want to take advantage of. But what requires him to spontaneously come forward? Well, I think it's permissible to tell the jury that this is his opportunity to speak to police and he's willing to do that. This is the point when logically the jury would infer this is when he would tell his story. I thought this was such well-established law that you were wrong. I mean, yeah, you've got a great opportunity to tell the police your story when they first catch you, but you don't have to and they can't comment on your silence. But what I'm talking about is after Miranda rights are read and he waives those and agrees to talk to police at that time. When the gun has been found is when is his opportunity to explain fully to the jury what happened here? And he never did that. And all of my questions that were asked of this particular defendant when he was on the stand related to that period of time, that window of opportunity. Was there a separate period of time when a detective came over and talked to him in the jail and he said, I'm not going to talk to you? Either the next day, Your Honor, or a day after that, a detective went to the jail and attempted to speak to him at that time and he invoked his rights. Now, if the defendant had objected at trial and the judge had let the prosecutor ask him about those silences anyway, would that be error? Well, Your Honor, I think it would raise the perspective that it may be error at that time. If it had been objected to, it may raise that perspective. It would depend on whether the question that was asked went to the detective or whether it related to the earlier post-Miranda period, that window of time when he waived Miranda rights, Your Honor. I mean, that would be the issue here. But every one of the questions that the prosecutor asked in that window of time related to that period. When the government believed the jury should hear the defendant's explanation at that time, and this whole story that he told for the first time that was never backed up by any evidence, by any defense witness or anybody else, that story was told, could have been told in that window of period to both Officer Slattery and Officer Passarge, and it never was. I guess the real question is, it could have been told. But was he required to tell it? And if he decides not to tell it, are you permitted to comment on that silence? The post-Miranda period until he invokes, I think it is permissible to comment on that period of time. I don't have any case law that says that. Well, if you look at the cases that are in our brief, Your Honor, I believe that there's nothing exactly on point with that. But the fact that after Miranda has been read and it's been waived by a defendant, I think that gives a wide latitude to prosecutors to ask, you know, why he didn't divulge anything during that period of time. And I think that my case lies in exactly on point. I think all the cases show that it's permissible for prosecutors to comment on that window of period of time from the time he waives Miranda until he invokes Miranda.  I can reassert your right to be silent at any time. And that's what he did here, Your Honor. And if you look, there was no other questions by the officers after that period of time. And there was definitely a window of time here where he had an opportunity to do that, and he didn't do that, Your Honor. And I think the record is clear on that. And we simply pointed out the inconsistencies in our cross-examination of the defendant and one quick question or one comment in closing argument or rebuttal argument that dealt with that. It was regarding that inconsistency, the fact that we didn't hear this story at any time during that post-Miranda period. And that was our position, and that's what we argued at that time, Your Honor. Was there any objection either during the testimony or at the time of closing argument to the prosecutor's questions or the prosecutor's allusion to the silence? Absolutely not, Your Honor. And there was no sidebars requested. There was no proposed jury instructions on behalf of the defense. Never was it ever raised, Your Honor. There are no further questions. Thank you. Thank you. I know you have all that time, but I just have 30 seconds. Take it. This question, this is another question I'd like to point the Court's attention to on page 84. It clearly comments on his post-invocation silence. Question by the prosecutor, line 21. At any point from the time you were arrested on the 10th until today, did you tell the story about Mr. Buckley supposedly stealing your driveline to anyone? Now, if that isn't a comment on post-invocation silence, then I don't know what is. And that is above and beyond the detective incident, which, incidentally, it is unconstitutional to even elicit testimony that someone invoked the right to remain silent, which the prosecutor clearly did. But there's no objection. Is it plain error in the light of the prior statements he's made that are inconsistent? Your Honor, I would look at the valeric. I'm just telling you, that's what's bothering me about the appeal. Is it plain error when there's no objection and in the light of prior inconsistent statements? Your Honor, in valeria, which is a plain error case, there was only one incident of the prosecutor eliciting testimony that someone invoked the right to remain silent, not even questioning about the drawing of adverse inference from that silence. And in that case, they set up a three-part test to look at whether it impacts somebody's substantial rights, which is the number of questions, whether it was argued during closing. And he argued it three times during closing. Were there prior inconsistent statements in that case? No, Your Honor. But the prior inconsistent statements are different. So you're not really addressing the issue that I'm giving you a chance, although I'm taking you over your time, I'm giving you a chance to address the issue that's bothering me. So I would suggest if you have a way to address it head-on in light of the inconsistent statements, you do. I can do that. Take the best shot. Page 76 and 78 of the excerpt from record, the prosecution asked Siebert questions about his prior inconsistent statements. He asked those questions that are permissible. Didn't you make this statement to the police? He made this statement because there was this dispute about whether he said knew or remembered. He asked questions about that, permissible. Didn't you tell the police that you weren't going to rat anybody else out? It wasn't even inconsistent statements. Siebert testified to that. That's what the cop said. But he was asking him about that again. That's fine. That's on page 78. Those two questions were asked. Those are not part of the 18 questions that we are alleging violate Doyle here. There's 18 questions here that transcend the constitutional limits. And three times it's emphasized to the jury they're an argument. It's pervasive, blatant Doyle error in this case. Let me tell you what's bothering me about the plain error. When I was a district judge, sometimes I would hear a prosecutor doing something on direct of his own witness or cross of a defense witness, and I would think, gee, if there's objection, I'm going to sustain it. But there was no objection, so I didn't do anything because I thought, well, the defense counsel knows the case better than I do. There may be some tactic here, something else that's going to come out, some evidence I don't know about, and the defense is letting this come in on purpose, letting the prosecutor walk into it. And, you know, I didn't want to try their case for them because I might not win it. I don't see why the judge should be sticking his nose into it, especially where you've got this bunch of prior inconsistent statements, and the judge – I don't see what's wrong with the judge just letting it go. Well, Your Honor, my best answer to that is this Court's precedence in Valoria where the Court says that Doyle error is so well established and such an important right that the prosecutor, the Court, everyone should be aware that it can't go on, and this Court's going to stand and correct it if it happens. You have all kinds of rights. Like you have an absolute right under the Confrontation Clause to keep out a lot of testimony, which you let in. Bank robbery, very often things get pretty sloppy about the Confrontation Clause and the Hearsay Rule on the proof that the bank is a federally insured institution. And the defense purposely lets it in just so that the jury doesn't get all tied up in this side issue that the defense is going to lose on. Just because there's a right doesn't mean that the judge starts trying the case for the defense lawyer. The plain error standard does not insulate the error. It does make it more difficult for us to prevail. And my best response is if you look at the factors this Court has articulated for when we apply plain error to Doyle error, that we meet the parameters. This isn't an isolated incident. This is pervasive error. The prosecutor should have known better than to do this. This is a well-established law. It's been around for almost 30 years that this shouldn't have happened, a completely deprived Siebert of his right to a fair trial because his credibility was crucial. Thank you, Counsel. Thank you. I'd like to advise the Clerk the machine's not working. Oh. Okay. Thanks. United States v. Siebert is submitted. Next is United States v. Roddy. That's submitted. We'll hear Jack Russell Terrier Network v. American Kennel Club. Thank you.
judges: D.W. Nelson, Kleinfeld, Gould